UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VIKKI A. SIMPSON,

        CASE NO. 09-CV-12228

   Plaintiff,

v.        DISTRICT JUDGE THOMAS L. LUDINGTON
        MAGISTRATE JUDGE CHARLES E. BINDER

LIFENET, INC.,

   Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**
(Doc. 2)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED** and the case **DISMISSED** with prejudice.

## II.   REPORT

### A.   Introduction

This case was removed from the Saginaw County (Michigan) Circuit Court on June 9, 2009. (Doc. 1.) Plaintiff's complaint alleges tortious interference with contract or business expectancy. The contract or business expectancy relates to Plaintiff's employment with Mobile Medical Response, Inc. (MMR). Plaintiff was a flight nurse/paramedic/education coordinator for MMR. Defendant Lifenet, Inc. (Lifenet), provides helicopter services when requested by MMR and Plaintiff was assigned in some fashion by MMR management to work with Lifenet. Plaintiff's employment with MMR was terminated in May 2006. Plaintiff alleges that the termination occurred as a result of Defendant Lifenet having made a "series of false statements regarding

Plaintiff to MMR's CEO and [having] improperly demanded that adverse action be taken against Plaintiff by MMR." (Doc. 1 at 5.)

Plaintiff's employment contract with MMR contained an arbitration agreement stating that it "shall cover all statutorily protected employment claims arising out of employment with Medical Mobile Response, including but not limited to: a) for breach of any contract or covenant (express or implied); b) for wrongful or constructive discharge; c) for discrimination, harassment;[1] and/or retaliation; and d) all tort claims – unless specifically excluded from arbitration by law." (Doc. 2, Ex. 1 at 11.)

Plaintiff initially sued MMR for wrongful discharge (whistleblower protection, breach of contract, and tortious interference) in the Saginaw County Circuit Court in August 2006.[2] (Doc. 2, Ex. 2 at 1.) In January 2007, Saginaw County Circuit Judge Jackson granted MMR's motion for summary disposition, finding that all claims against MMR were governed by the valid and binding arbitration agreement. (Doc. 2, Ex. 3 at 4.) Plaintiff then sued MMR again in March 2007,[3] seeking to compel arbitration because after the 2006 case was dismissed, Plaintiff had demanded arbitration but Defendant refused to arbitrate on the basis that the demand was untimely. (Doc. 2, Ex. 4 at 2.) The 2007 case appears to also have been dismissed and the Michigan Court of Appeals denied leave to appeal on June 1, 2009. (Doc. 2, Ex. 5 at 1.) The instant suit was filed in Saginaw County Circuit Court on May 15, 2009. (Doc. 1 at Ex. 1.)

On June 16, 2009, Defendant filed a motion to dismiss. (Doc. 2.) Plaintiff responded to the motion on July 21, 2009 (Doc. 8), and Defendant replied on July 30, 2009. (Doc. 9.) The

---

[1]The inconsistent use of commas and colons is in the original text.

[2]Saginaw County Case Number 06-61457.

[3]Saginaw County Case Number 07-63837.

2

motion was referred to the undersigned magistrate judge on July 1, 2009. (Doc. 3.) Oral argument was held on August 11, 2009. Therefore, this motion is ready for Report and Recommendation.

### B. Motion Standards

In facing a motion to dismiss for failure to state a claim or for lack of jurisdiction under Rule 12(b)(6) or (1) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that a defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of

invidious discrimination were insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### C.      Arguments of the Parties

Defendant contends that the complaint should be dismissed because Plaintiff's claim is subject to the arbitration agreement between Plaintiff and MMR under an equitable estoppel theory since Plaintiff's claim that Defendant tortiously interfered is interdependent and intertwined with the arbitrable claims against MMR for breach of employment contract, etc. (Doc. 2.) Defendant contends that a non-signatory may enforce an agreement to arbitrate when: (1) "'the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory,'" or (2) "'when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" (Doc. 2, Br. in Supp. of Mot. at 4 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Defendant also argues that Plaintiff's claim falls within the scope of the arbitration agreement. (*Id*. at 6; Ex. 1 ¶ 2.)

Plaintiff responds that the Federal Arbitration Act (FAA) does not apply because both Plaintiff and MMR are Michigan citizens and that Michigan law provides that arbitration agreements are only binding on signatories to the contract. (Doc. 8 at 4.) Plaintiff further argues that the arbitration agreement expressly excludes claims "'specifically excluded from arbitration by law'" and that since Michigan does not apply arbitration clauses to non-signatories, arbitration of the claim would be specifically excluded from arbitration by law. (Doc. 8 at 5-6.)

Defendants reply that the FAA applies to this action because even intrastate relations involve interstate commerce, that the FAA would preempt contrary state law but that Michigan law recognizes that non-signatories may invoke arbitration anyway, and that Plaintiff's claim is within the scope of the arbitration agreement. (Doc. 9 at 2-6.)

At oral argument, when asked if Defendant contended that it was a third party beneficiary of the employment contract and arbitration agreement between Plaintiff and MMR, Defendant responded that it was not required to be one and that it wanted the court to focus on the nature of the claims rather than the nature of the relationship between the parties to the contract and lawsuit.

**D.     Discussion**

A "court should be wary of imposing a contractual obligation to arbitrate on a noncontracting party." *Merrill Lynch Investment Managers v. Optibase, LTD,* 337 F.3d 125 (2d Cir. 2003) (cited with approval in *D.C.D. Co., L.L.C. v. Bank of America, N.A.*, No. 04-72944, 2007 WL 45935, at *4 (E.D. Mich. Jan. 5, 2007)). However, I note at the outset that this motion involves a nonsignatory Defendant seeking to compel a signatory Plaintiff to arbitrate, not a signatory seeking to compel a nonsignatory to arbitrate. *See Fitzgerald v. HRB Management, Inc.*, No. 05-CV-74768-DT, 2006 WL 1984173, at *6 (E.D. Mich. July 13, 2006). Thus, I suggest that this admonition is not applicable here.

5

As to application of the FAA, the "FAA preempts Michigan's law regarding common law arbitration" as long as "the contract 'involves commerce' as that definition is used in the FAA." *Mechanical Power Conversion, L.L.C.*, 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007).  The FAA exempts "'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce' and this exemption includes only employees actually engaged in transportation of goods in commerce.  *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 602 (6th Cir. 1995), *quoting* 9 U.S.C. § 1.  Other employment contracts are generally subject to the FAA. *O'Neil v. Hilton Head Hospital*, 115 F.3d 272, 274 (4th Cir. 1997)(plaintiff respiratory therapist's employment contract subject to FAA); *Cosgrove v. Shearson Lehman Bros.*, 105 F.3d 659, 1997 WL 4783, at *2 (6th Cir. 1997)(unpublished)(plaintiff sales assistant's employment contract subject to FAA); *Walker v. MDM Services Corp.*, 997 F. Supp. 822, 824 (W.D. Ky. 1998)(plaintiff administrative assistant's employment contract with MDM subject to the FAA).[4]

As to the ultimate question whether a nonsignatory may compel arbitration under the circumstances of this case, I find *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) instructive.  In *Grigson*, Plaintiff was trustee for owners of the 1994 movie "Return of the Texas Chain Saw Massacre" (the movie) which starred the then obscure actor Matthew McConaughey (actor).  In October of 1995, Ultra Muchos and River City (producers) entered into a distribution agreement with Columbia TriStar Home Video (Tristar).  Tristar was given complete discretion on how to exercise the distribution rights.  Under a separate, earlier agreement, the owners of the movie were to receive a portion of the producers' percentage profits.  After acting

---

[4] Michigan interprets its arbitration statute in a like manner.  "[T]he MAA gives broad approval to arbitration agreements of all sorts, making express exceptions only for collective labor contracts and certain real estate disputes [because] [b]y expressly including these two categories of contract, the MAA implicitly excludes all other categories." *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 159, 596 N.W.2d 208 (1999).

6

in the movie and prior to the fall of 1996, the actor signed an agency contract with Creative Artists Agency, L.L.C. (Creative Artists). Distribution of the movie was delayed to take advantage of the actor's success but eventually the movie was given a limited distribution. In mid-1997, Plaintiff, as Trustee for the owners of the movie, sued the producers and TriStar for breach of the distribution agreement. Plaintiff voluntarily dismissed the suit when TriStar sought to enforce the arbitration clause of the distribution agreement. In late 1997, several months after the voluntary dismissal, Plaintiff and the producers sued the actor and Creative Artists for tortious interference with the distribution agreement alleging that Defendant allegedly pressured TriStar to limit the release of the movie because they viewed it as an improper exploitation of the actor's success he enjoyed after making the subject movie.

Plaintiff Grigson conceded that he was a third-party beneficiary of the distribution agreement and that he, like the signatories, was required to arbitrate with TriStar all disputes concerning that agreement. However, the collective plaintiffs, Grigson and the producers, contended that because Creative Artists was not a party to the distribution agreement, the plaintiffs were not required to arbitrate their dispute against Creative Artists and that the limited bases for equitable estoppel did not apply. The defendants in *Grigson*, like the instant Defendant, countered that because the tortious interference claim was intertwined with the distribution agreement, they were entitled to compel arbitration through the application of equitable estoppel.

The Fifth Circuit in *Grigson* joined the Eleventh Circuit in its application of the "intertwined-claims test" for equitable estoppel. *Grigson*, 210 F.3d at 527-28. The court noted that the "linchpin for equitable estoppel is equity-fairness." *Id.* at 528. The court concluded that "to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness." *Id.* The court stated that:

7

> [I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of the required participation in the proceedings. Consequently, detrimental reliance by that signatory *cannot* be denied; it and the signatory plaintiff had agreed to arbitration in lieu of litigation . . . but, the plaintiff is seeking to avoid that agreement by bringing action against a non-signatory charged with acting in concert with that non-defendant signatory. Of course, detrimental reliance is one of the elements for the usual application of equitable estoppel.

*Id.* (emphasis in original).[5] The court further noted that the plaintiffs' current case was "quite similar to Grigson's first action against TriStar. After quickly filing a voluntary dismissal of that action, [plaintiffs] brought this one against McConaughey and Creative Artists, non-signatories to the distribution agreement, for *inter alia*, interfering with that agreement . . . this is a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause." *Id.* at 530.

In the instant case, Plaintiff alleges that the termination occurred as a result of Defendant having made a "series of false statements regarding Plaintiff to MMR's CEO and improper[] demand[s] that adverse action be taken against Plaintiff by MMR." (Doc. 1 at 5.) The instant Plaintiff, like *Grigson*, is bringing an action against the non-signatory, LifeNet, for actions taken in concert with the non-defendant signatory, MMR. Plaintiff's original Saginaw County cause of action against MMR is virtually identical to the instant action against LifeNet. The factual basis is exactly the same; the only modification made in the instant complaint was to remove the wrongful discharge claims (breach of contract and whistleblower protection) that were brought against MMR while retaining the tortious interference claim but asserting it against LifeNet rather than MMR. In addition, the procedural history reveals that the current action also appears to have been filed in an attempt to avoid the arbitration clause. I therefore suggest that estoppel precludes

---

[5]The court also noted the "federal pro-arbitration policy." *Id.*

8

the instant action and that Defendant Lifenet's motion to dismiss should be granted. *Accord, Orcutt, M.D. v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 752 (S.D. Ohio 2002) ("When each of the signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate [] directly to the [written] agreement,' and arbitration is appropriate.").

While not binding, I believe the concerns of the dissenting opinion in *Grigson* deserve some attention. The dissent noted the maxim that "nearly anything can be called estoppel" and would have limited the application of estoppel to situations where an implied-in-fact agreement between the parties to be bound by the arbitration clause is found. *Id.* at 532. The dissent cited cases that appropriately applied estoppel where a construction contractor entered into a contract with the owner of a proposed facility which included an arbitration clause, and where the contract described the duties of the non-signatory construction manager as well as those of the signatory general contractor. *Id.* at 534 (citing *McBro Planning & Development Co. v. Triangle Elec. Const. Co., Inc.*, 741 F.2d 342 (11th Cir. 1984); and *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)). The dissenting opinion found the nonsignatory construction manager's reliance on equitable estoppel appropriate because the construction manager's work was integrated with the signatory construction contractor in the contract such that an inference could be made that the signatory and nonsignatory parties alike impliedly agreed to be bound by the arbitration clause of the contract. *Id.*

I suggest that this case presents a situation analogous to that found by *Grigson*'s dissent to be appropriate for application of equitable estoppel. In the instant case, there is no evidence that the contract between Plaintiff and MMR expressly referred to Lifenet. However, Plaintiff's own allegations in the complaint are that Lifenet wielded sufficient power over the employment

9

contract between Plaintiff and MMR to allow Lifenet, according to Plaintiff, to successfully interfere with that employment contract to cause Plaintiff to be terminated. I therefore suggest that even if the dissenting opinion's concerns carried the day, Plaintiff avers a sufficiently integrated relationship between MMR and LifeNet to satisfy the dissenters concerns. I therefore suggest that Plaintiff's claim of tortious interference against Lifenet falls within the scope of the arbitration clause and that Lifenet's motion to dismiss should be granted.

I further suggest that even if Michigan law were applied, the result would be the same. Michigan courts also apply "five theories for binding nonsignatories to arbitration agreements," including estoppel. *Beaver v. Cosmetic Dermatology & Vein Centers of Downriver, P.C.*, No. 253568, 2005 WL 1968171, at *2 (Mich. App. Aug. 16, 2005). Michigan courts also hold that "a court may compel a nonsignatory to an arbitration agreement to arbitrate that party's claims that are derivative of, inseparable from, and essentially identical to the related and underlying claims of the signatory of the arbitration agreement if the signatory is contractually bound to submit the related and underlying claims to arbitration." *Ahlbrand v. Keeley*, No. 203646, 1999 WL 33435945, at *1 (Mich. App. Sept. 3, 1999). In *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 742 N.W.2d 409 (2007), the Michigan Court of Appeals held that "the broad language of the arbitration clause [in the employment agreement] - 'any dispute or controversy arising out of or relating to' the agreement - vests the arbitrator with the authority to hear plaintiffs' tortious interference and defamation claims, even if they involve nonparties to the agreement." The instant agreement states that it covers all claims "arising out of employment" with MMR, which, I suggest, is broader than a provision that purports to cover claims arising out of the employment agreement and which I further suggest is qualitatively synonymous with the "arising out of or relating to" the employment agreement language in *Rooyakker*. I therefore

10

suggest that the instant tortious interference claim against Lifenet is subject to arbitration under Michigan law as well as federal law, even though Lifenet is a nonsignatory to the agreement between Plaintiff and MMR.

Although the court is sympathetic that Plaintiff's decision to forego demanding arbitration and to instead attempt to file lawsuits may result in Plaintiff being left without recourse in either the state or federal courts, such consequence does not provide a basis to set aside a valid arbitration agreement.  I therefore suggest that Defendant's motion be granted.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                 s/ *Charles E Binder*
                                               CHARLES E. BINDER
Dated: September 23, 2009                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date:  September 23, 2009			By     s/Patricia T. Morris
					Law Clerk to Magistrate Judge Binder

12